**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
212.213.8311
212.779.0028 (fax)
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child, C.H.<br><br>**Plaintiffs,**<br><br>v.<br><br>OMEGLE.COM LLC,<br><br>**Defendant.** | **Civil Action No.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs M.H. and J.H., on behalf of their minor child, C.H., by and through their attorneys, Hach Rose Schirripa & Cheverie LLP, bring this action for damages and other legal and equitable relief against Omegle.com LLC ("Omegle" or the "Company").  Upon information and belief, Plaintiffs allege as follows:

### INTRODUCTION

1. This is a diversity action brought by the parents of a minor child who used Defendant Omegle's website and was subsequently victimized and sexually exploited. The sexual exploitation of minor C.H. was completely avoidable and only occurred because of Defendant Omegle's operation of its website.

2. As set forth more fully herein, Omegle's unfair and deceptive business practices have had serious ramifications for children across the country, including, but not limited to, being

stalked, sexually assaulted, abused, and exploited by adults and predators.  As a result, Plaintiffs bring claims under federal and state law to obtain redress.

## PARTIES

3. Plaintiffs M.H. and J.H. reside within the State of New Jersey, in Morris County, New Jersey.  Plaintiffs M.H. and J.H. are the natural parents of minor C.H.  C.H. was born in 2009 and all times relevant was eleven (11) years old.

4. While using Omegle, neither C.H. nor her parents were asked for verifiable parental consent to collect, disclose, or use C.H.'s personally identifiable information, including C.H.'s geolocation.  Moreover, neither M.H. nor J.H. were ever provided direct notice with regard to the collection, use and disclosure of C.H.'s data.

5. Defendant Omegle.com LLC is a limited liability corporation registered in the State of Washington, with its principal place of business located at 4557 11th Ave NE, Apt 131, Seattle, Washington, 98105-0200 and operates throughout the United States, including in New Jersey and internationally.

6. Founded by Leif Brooks, Omegle grew in popularity since 2009. The Omegle website gets millions of page views per day with an uptick of user activity during the COVID-19 pandemic.

## JURISDICTION AND VENUE

7. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

8. Federal subject matter jurisdiction arises out of diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value

of $75,000.00, exclusive of interest and costs, and is between citizens of different states. In addition, 28 U.S.C. § 1367 provides supplemental jurisdiction for Plaintiffs' state law claims.

9. Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202.

10. Further, this Court has personal jurisdiction over the Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing its products and services to be disseminated in this District, including its website used by C.H.

11. Venue in this District is proper under 28 U.S.C. § 1391(b) because the events giving rise to the action occurred in Morris County, located entirely within the geographic boundaries for the District of New Jersey.

## SUBSTANTIVE ALLEGATIONS

***COPPA Prohibits the Collection of Children's Personally Identifiable Information Without Verifiable Parental Content***

12. Recognizing the vulnerability of children in the Internet age, in 1999 Congress enacted the Children's Online Privacy Act ("COPPA"). *See* 16 U.S.C. §§ 6501-6505. COPPA's express goal is to protect children's privacy while they are connected to the internet. Under COPPA, developers of child-focused apps and websites cannot lawfully obtain the personally identifiable information of children under 13 years of age without first obtaining verifiable consent from their parents.

13. COPPA applies to any operator of a commercial website or online service that is directed to children and that: (a) collects, uses, and/or discloses personally identifiable information of children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personally identifiable information is "collected or maintained on behalf of an operator …[t]he operator benefits by allowing another person to collect personally identifiable information directly

from users of" an online service. 16 C.F.R. § 312.2.  Further, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personally identifiable information from children.

14. Under COPPA, "personally identifiable information" includes information such as names, email addresses, and social security numbers. COPPA's broad definition of "personally identifiable information" is as follows:

> "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier´); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

15. In order to lawfully collect, use, or disclose personally identifiable information, COPPA requires that an operator meet specific requirements, including each of the following:

   a. Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collets from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

   b. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

   c. Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personally identifiable information from children.

16. Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personally identifiable information is collected from a child, a parent of the child . . . [r]eceives notice of the operator's personally identifiable information collection, use and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personally identifiable information." 16 C.F.R. § 312.2.

17. The FTC recently clarified acceptable methods for obtaining verifiable parent consent, include:

   a. Providing a form for parents to sign and return;

   b. Requiring the use of a credit/card online payment that provides notification of each transaction;

   c. Connecting to trained personnel via video conference;

   d. Calling a staffed toll-free number;

   e. Asking knowledge based questions; or

   f. Verifying a photo-ID from the parent compared to a second photo using facial recognition technology.

*Defendant is An Operator Under COPPA*

18. Omegle is an "operator" pursuant to COPPA. Specifically, COPPA defines an "operator," in pertinent part, as:

> any person who operates a Web site located on the Internet or an online service and who collects or maintains personally identifiable information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation. 16 C.F.R. § 312.2.

19. Defendant operated its website entirely online. Indeed, without a connection to the internet, Plaintiff could never have accessed Omegle's service.

*The Company's Operations*

20. Omegle is a website that enables an individual user to communicate with random individuals across the world anonymously via text and video.

21. Specifically, users log in using a webcam and microphone and are matched with another random user. Although users are paired randomly, there are some cases where conversations are matched according to similarity in subjects. The website designates users as "You" or "Stranger 1" or "Stranger 2."

22. When a user loads the Omegle webpage, the user is met with the following language: "To help you stay safe, chats are anonymous unless you tell someone who you are (not suggested!), and you can stop a chat at any time. **Predators have been known to use Omegle, so please be careful**." (Emphasis added.)

23. Omegle's website declares, "Video is monitored. Keep it clean."

24. To use the Omegle website, a user simply clicks on "text" or "video" under the words "start chatting." The user is then immediately placed in a chat with a stranger.

25. Omegle's website does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen (13) from accessing the website.

26. Omegle's website is vulnerable to hacking. As a result, a user of Omegle is able to grab screenshots of previous conversations and then use this data to obtain another user's geographic location.

*The Company's Infamy and Synonymy With Sexual Expression*

27. Since 2016, the use of Omegle's website by pedophiles became known to the public and to the Company itself.

28. Vigilante activists became aware of Omegle's repeated use by pedophiles and even filmed videos of themselves attempting to catch pedophiles in the act.[1]

29. Further, the Company has been mentioned in numerous criminal cases across the country as individuals have been arrested for possessing and promoting child pornography. For example, in April 2016, Ammar Butaleb was arrested in Pittsburgh, Pennsylvania after he received, viewed and downloaded child pornography through Omegle. In December 2018, in Scranton, Pennsylvania Robert Alexander Kusma was charged with the sexual assault of a minor under sixteen (16) years of age after first meeting and grooming the girl on Omegle. In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested in what was dubbed "Operation Home Alone" for using social media platforms – including Omegle – to lure children for sex. In February 2020, Dalton Matthew Bates was arrested in Kentucky for thousands of counts of possession of child pornography across multiple social media platforms and applications, including Omegle. Most recently, in July 2020, in Morris County, New Jersey Robert Murphy pled guilty to endangering the welfare of a child after he tried to set up an in person meeting for sex with an eleven year old girl he met on Omegle. Historically, there have been numerous arrests in other countries – for example in Norway, Canada, and the United Kingdom – for using internet services, like the Company, to prey upon, sexually exploit, and eventually sexually abuse and assault children.

---

[1] Some of these videos have been the subject of lawsuits in courtrooms across the country.

30. Upon information and belief, the Company has been contacted by individuals either representing these exploited children or the authorities investigating the crimes committed against these children.

31. As a result the countless allegations of the use of the Company's website by those who target children for sexual abuse, assault and exploitation resulting in the both media coverage, along with the arrests and convictions of these predators, the Company had full knowledge of the extent to which its website was used as vehicle to sexually target, groom, exploit and abuse children, like C.H.

32. The Company is aware that minor children use its website. In fact, the Company has the following language printed in small print on the bottom of its website:

> By using the Omegle Web site, and/or related products and/or services ("Omegle:, provided by Omegle.com LLC), you agree to the following terms: Do not use Omegle if you are under 13. If you are under 18, use it only with a parent/guardian's permission. Do not transmit nudity, sexually harass anyone, publicize other peoples' private information, make statements that defame or libel anyone, violate intellectual property rights, use automated programs to start chats, or behave in any other inappropriate or illegal way on Omegle. Understand that human behavior is fundamentally uncontrollable, that the people you encounter on Omegle may not behave appropriately, and that they are solely responsible for their own behavior. Use Omegle at your own peril. Disconnect if anyone makes you feel uncomfortable. You may be denied access to Omegle for inappropriate behavior, or for any other reason.[2]

33. The use of the disclaimers on the Company's website alone indicates that Omegle had knowledge of the improper, illegal and immoral use of its website.

---

[2] *See* https://www.omegle.com/ (last accessed August 17, 2020).

34. Defendant Omegle does not provide any guidance to parents looking to monitor their children's use of the website. The Company's printed warning on its homepage is nothing but window dressing.

35. Despite the Company's knowledge of the use of its website for these nefarious purposes, the Company took no precaution to monitor or log the content of the chats of its users.

36. Further, the Company took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent.

37. As a result of the Company's failures, hundreds of thousands of minors who use Omegle's website are currently subject to sexual exploitation and abuse.

*C.H. Uses Omegle and is Predictably Victimized and Damaged*

38. During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook from her school.

39. On or about March 31, 2020, C.H. used her Chromebook to access the Omegle website. Notably, C.H. had never used Omegle's website before. C.H. was first paired to chat with a group of minors who appeared to be older than C.H. C.H. ended the chat with the group of minors and was placed in another chat.

40. Upon entering the second chat, C.H. encountered a black screen. Shortly thereafter C.H. began to see text being typed on the black screen.

41. This unknown user ("Doe") informed C.H. that he knew where C.H. lived and provided C.H. with her geolocation. Further, Doe also told C.H. that he knew that that there were other cell phones and computers in C.H.'s house, which he threatened to hack.

42. Scared and confused, C.H. pleaded with Doe to leave her alone.

9

43. C.H. was instructed to remove all of her clothing – including her underwear – and touch herself in front of the camera. C.H. pleaded with Doe and offered gift cards to Doe instead of complying with his demand. Doe became more forceful with C.H. and demanded that she remove her clothing. Eventually, C.H. complied with Doe's demands and disrobed and touched herself according to the instructions she received.

44. Doe captured screen grabs or videos of C.H.'s actions forever memorializing her forced pornographic performance.

45. Immediately after this incident, C.H. notified her parents of what occurred and M.H. and J.H. reported the incident to the local police authorities.

46. The criminal investigation into C.H.'s sexual exploitation has reached a dead end due to the multiple issues law enforcement regularly face with sexual predators who utilize Omegle and websites like it to prey upon children.

*Omegle Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent*

47. Omegle allowed for the collection, use, and disclosure of C.H.'s personally identifiable information and/or viewing C.H.'s data without notifying her parents and/or guardians.

48. Omegle never obtained verifiable parental consent to collect, use, or disclose children's personally identifiable information and/or viewing data.

49. C.H. never knew that her personally identifiable information and/or viewing data could be collected, disclosed, or used because at all times Defendant failed to provide C.H's parents/guardians any of the required disclosures, never sought verifiable parental consent, and never provided any mechanism by which the C.H's parents or guardians could provide verifiable consent.

50. Defendant's unlawful collection of C.H.'s personally identifiable information and/or viewing information for commercial gain exposed C.H., and others like her, to pedophiles and other predators online.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710

51. Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

52. Defendant is a video tape service provider subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). Defendant is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio-visual materials" by delivering videos recorded on its website.

53. As users of the website, C.H. is a consumer within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

54. Defendant collected consumers' personally identifiable information ("PII") within 18 U.S.C. § 2710 (a)(3).

55. Defendant has disclosed PII to third-parties, including data brokers and advertisers, to generate revenue and profit.

56. Defendant failed to solicit and/or obtain consent from C.H. to collect and disclose her PII, nor did Defendant provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

57. The knowing disclosures and transmission of PII violates the VPPA within the meaning of 18 U.S.C. § 2710 (b)(1).

58. Accordingly, C.H. is entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## INTRUSION UPON SECLUSION

59. Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

60. C.H. has a reasonable expectation of privacy in her online behavior, generally. C.H.'s private affairs include her behavior on any device that may be monitored by the surreptitious collection and tracking of C.H.'s personally identifiable information and/or viewing data employed or otherwise enabled by the website.

61. The reasonableness of such expectation of privacy is supported by Defendant's unique position to monitor C.H.'s behavior through access to C.H.'s private devices. It is further supported by Defendant's surreptitious, highly-technical tracking of users through video.

62. Defendant intentionally intruded onto and into C.H.'s solitude, seclusion, or private affairs by intentionally designing the website to allow for the surreptitious and improper gaining of knowledge of, review, and or retention of C.H.'s activities through the technologies and activities described herein.

63. These intrusions are highly offensive to a reasonable person. This is evidenced by, inter alia, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing C.H's personally identifiable information and/or viewing data with

potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

64. C.H. was harmed by the intrusion into her private affairs as detailed throughout this Complaint.

65. Defendant's actions and conduct complained of herein were a substantial factor Defendant's actions and conduct complained of herein were a substantial factor in causing the harm suffered by C.H.

66. As a result of Defendant's actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Defendant's actions which were malicious, oppressive, and willful were calculated to injure C.H. and made in conscious disregard of her rights.  Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENCE**

67. Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

68. Omegle owed C.H. and the general public the highest duty of care to provide safe means and methods for using its website.

69. Omegle breached the duty of care by failing to implement adequate safety and security measures – including monitoring its users' age and ongoing monitoring of its users' conduct while using its service and application. Defendant had an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application to prevent the mistreatment of its users.

70. Defendant failed to prevent minors from using its website despite its knowledge that its website was used by minors; was inherently dangerous; and had been misused by sexual predators to groom and sexually abuse and exploit children. Defendant further failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed, sexually abused, or otherwise mistreated and Defendant's aforesaid failures enabled the tortious conduct to occur and continue.

71. As a direct and proximate result of Omegle's breaches of duty of care owed, C.H. – a minor – was subjected to being sexually exploited on the internet by an unknown adult male.

72. The acts and omissions of Omegle detailed above were committed wantonly, willfully, with reckless and/or callous disregard for the safety of its users, including C.H.

73. As a result of the above negligence on the part of the Omegle, C.H. was caused to suffer severe and painful personal injuries, emotional distress, sexual misconduct, pain, suffering, and mental anguish all of a permanent nature.

74. By reason of the foregoing, Omegle is liable for compensatory damages and punitive damages, together with interests and costs.

**FOURTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

75. Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

76. Omegle engaged in reckless, extreme, and outrageous conduct by failing to take any real precautions preventing children from using its website, failing to monitor its website and use of its website to ensure that its users were not being sexually abused, mistreated, or exploited despite knowing that children were using its service and application and that its service and

application were providing sexual predators with access to children for those predators to use Omegle's website for the purposes of what would likely be causing them harm.

77. By its actions and omissions, Omegle intended to and did intentionally and recklessly cause C.H. to suffer severe emotional distress.

78. Omegle's misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of its business community, and society as whole, would tolerate and demonstrates an utter disregard by Omegle of the consequences that would follow.

79. The conduct was also engaged in with oppression and/or malice, and was in conscious disregard for the rights and safety of others, including, but not limited to C.H. herein, so as to warrant the imposition of punitive damages.

80. As a direct and proximate result of the Omegle's conduct, the Doe gained access to C.H., and engaged in an act of sexual exploitation. C.H. has suffered, and continues to suffer, severe emotional distress, for which she is entitled to an award of damages.

81. Omegle knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

82. By reason of the foregoing, Omegle is liable for compensatory and punitive damages, together with interests and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief: compensatory damages, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
August 25, 2020

                                                                                           Respectfully submitted,

                                                                                          **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                                                                                          By: */s/ Hillary Nappi*
                                                                                          Frank R. Schirripa
                                                                                          Hillary M. Nappi
                                                                                          112 Madison Avenue, 10th Floor
                                                                                          New York, New York 10016
                                                                                           Telephone: (212) 213-8311
                                                                                          Facsimile: (212) 779-0028
                                                                                          fschirripa@hrsclaw.com
                                                                                          hnappi@hrsclaw.com

                                                                                          *Attorneys for Plaintiffs*