## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H.,<br><br>Plaintiffs,<br><br>v.<br><br>OMEGLE.COM, LLC,<br><br>Defendant. | Civil Action No. 2:20-cv-11294-KM-JBC<br><br>**Motion Return Date: December 21, 2020** |

---

## MEMORANDUM IN SUPPORT OF DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

---

**Trimboli & Prusinowski, LLC**

James T. Prusinowski (JP0729)
jprusinowski@trimprulaw.com
268 South Street
Morristown, NJ 07960
(973) 660-1095

*Attorneys for Defendant OMEGLE.COM, LLC*

*On the Brief:*
Stacia N. Lay (admitted *pro hac vice*)
Venkat Balasubramani (admitted *pro hac vice*)

## TABLE OF CONTENTS

FACTUAL ALLEGATIONS ................................................................... 1

I.    The Parties .................................................................................. 1

II.   C.H.'s Use of the Omegle Website ............................................... 2

III.  Procedural History..................................................................... 3

DISCUSSION.................................................................................... 4

I.    Omegle is Not Subject to Either General or Specific Personal
      Jurisdiction in the State of New Jersey.......................................... 4

      A.    Omegle is Not Subject to General Jurisdiction in New Jersey ............ 5

      B.    The Complaint Lacks Any Allegation of Express Aiming by
            Omegle, and Specific Jurisdiction is Likewise Unavailable................ 6

II.   Plaintiffs Fail to State Any Plausible Claim for Relief Against Omegle ....... 8

      A.    Plaintiffs' State-Law Claims are Barred by Section 230 of the
            Communications Decency Act.............................................................. 9

            1.    Omegle is the provider of an "interactive computer
                  service" ..................................................................................... 11

            2.    Plaintiffs' state-law claims seek to treat Omegle as the
                  publisher or speaker of third-party communications .............. 11

            3.    The Complaint fails to allege that Omegle created or
                  authored any offensive content ................................................ 14

      B.    Plaintiffs Cannot State a Plausible Claim Under the VPPA ............. 15

            1.    Omegle is not a "video tape service provider" under the
                  VPPA ....................................................................................... 16

            2.    C.H. is not a "consumer" as defined by the VPPA.................. 17

3.      Omegle did not disclose "personally identifiable information" as defined by the VPPA ..................................... 21

C.      The Complaint Fails to Allege Any Plausible State-Law Claims...... 25

1.      The Complaint fails to state a plausible claim for intrusion upon seclusion for the use of the video real-time chat service.............................................................................. 25

2.      Plaintiffs fail to state a plausible claim for intentional infliction of emotional distress against Omegle...................... 31

3.      Plaintiffs fail to state a claim for negligence as a matter of law .................................................................................. 35

CONCLUSION................................................................................. 40

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629 (D.N.J. 2004)........ 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................8, 9, 30

*Austin-Spearman v. AMC Network Entm't LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015) ..................................................... 19, 20

*Beckman v. Match.com, LLC*, No. 2:13-CV-97 JCM (NJK),
    2017 U.S. Dist. LEXIS 35562 (D. Nev. Mar. 10, 2017) ...............................39

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (N.J. 1988)........................ 31, 32

*Carvalho v. Toll Bros. & Developers*, 143 N.J. 565 (N.J. 1996)....................... 36, 37

*Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017)....... 7

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)........................................................ 5, 6

*DiMeo v. Max*, 248 F. App'x 280 (3d Cir. 2007) ....................................................10

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ...............................................13

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ...................................39

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx),
    2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ................... 38, 39

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ..............38

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017) ................... 38, 39

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .....................................23

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) ................ 15, 18, 20

*Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303 (N.J. 2013) ....................37

*Fleuhr v. City of Cape May*, 159 N.J. 532 (N.J. 1999).............................................33

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ..............................................10

*Four Navy SEALs v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005).....29

*Friedman v. Martinez*, 242 N.J. 449 (N.J. 2020).....................................................25

*Frutta Bowls Franchising LLC v. Bitner*, No. 18-2446 (FLW),
   2018 U.S. Dist. LEXIS 208311 (D.N.J. Dec. 10, 2018)................................. 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .............. 5

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003) ....................................10, 11, 12

*Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15
   (N.J. Super. Ct. App. Div. 2001) ...................................................................32

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018)........................ 12, 14

*Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426 (N.J. 1993) ...................................36

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)...........9, 35

*In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..........................23

*In re Hulu Privacy Litig.*, No. 11-cv-3764 (LB),
   2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014)............................23

*In re Hulu Privacy Litig.*, No. C 11-03764 LB,
   2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10, 2012) .........................19

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ...... passim

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576 (N.J. 2013) .....36

*Jevic v. Coca Cola Bottling Co.*, No. 89-4431,
   1990 U.S. Dist. LEXIS 8821 (D.N.J. June 6, 1990)............................... 25, 26

*Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22
    (N.J. Super. Ct. App. Div. 1997) ................................................................35

*Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561 (3d Cir. 2017) ........................ 5

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH,
    2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) .................... 28, 29, 30

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70,
    2018 U.S. Dist. LEXIS 51066 (W.D. Pa. Mar. 27, 2018) ...................... 14, 15

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ....................................................... 9

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) .................... 4, 5

*Mmubango v. Google, Inc.*, No. 12-1300,
    2013 U.S. Dist. LEXIS 24989 (E.D. Pa. Feb. 22, 2013) ..............................15

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) .......................... 6

*Parker v. Google, Inc.*, 242 F. App'x 833 (3d Cir. 2007) .......................................11

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ................................10

*Parkway-Kew Corp. v. Harris Mach. Tools*, No. 20-6044,
    2020 U.S. Dist. LEXIS 202687 (D.N.J. Oct. 30, 2020) ................................ 7

*People v. Stipo*, 195 Cal. App. 4th 664,
    124 Cal. Rptr. 3d 688 (Cal. Ct. App. 2011) ..................................................29

*People Express Airlines, Inc. v. Consol. Rail Corp.*, 100 N.J. 246 (N.J. 1985) ......34

*Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) ...............................................19

*Phillips v. Snap-on, Inc.*, No. 19-cv-2229,
    2020 U.S. Dist. LEXIS 8403 (D.N.J. Jan. 17, 2020) ...................................... 8

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ................................... 4

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ..............28

*Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Assoc.*,
  819 F.2d 434 (3d Cir. 1987) ............................................................. 4

*Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, No. 16-6076,
  2017 U.S. Dist. LEXIS 196980 (E.D. Pa. Nov. 29, 2017) ............................ 5

*Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) ........................23

*Rodriguez v. Certified Credit & Collection Bureau*, Civ. No. 19-1649,
  2019 U.S. Dist. LEXIS 153661 (D.N.J. Sept. 9, 2019) ................................... 8

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ......................... passim

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) ................................ 7

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016) ................................................... 19, 20

## Statutes and Rules

18 U.S.C. § 2710....................................................................5, 15

18 U.S.C. § 2710(a)(1) ................................................................17

18 U.S.C. § 2710(a)(3) ............................................................ 21, 22

18 U.S.C. § 2710(a)(4) ............................................................ 16, 17

18 U.S.C. § 2710(b)(1) ................................................................16

47 U.S.C. § 230(c)(1) ................................................................. 9

47 U.S.C. § 230(e)(1) .................................................................10

47 U.S.C. § 230(e)(3) .................................................................10

FED. R. CIV. P. 8(a)(2).................................................................. 8

FED. R. CIV. P. 12(b)(2) ................................................................ 4

FED. R. CIV. P. 12(b)(6) ................................................................................ 9

## **Other Authority**

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d....................................................31

RESTATEMENT (SECOND) OF TORTS § 46, cmt. j .....................................................31

RESTATEMENT (SECOND) OF TORTS § 302B, cmt. d................................................34

RESTATEMENT (SECOND) OF TORTS § 652B..........................................................25

RESTATEMENT (SECOND) OF TORTS § 652B, cmt. b...............................................27

Plaintiffs M.H. and J.H., on behalf of their minor child C.H., (collectively, "Plaintiffs" or "C.H."), seek to hold Defendant Omegle.com, LLC ("Omegle") responsible for the criminal actions of a third-party user of Omegle's online real-time chat service. While the alleged criminal conduct of the third-party user is reprehensible, Omegle cannot be held responsible for that conduct as a matter of law. As detailed below, Section 230 of the Communications Decency Act bars Plaintiffs from holding Omegle responsible for the communications of the third-party user. Alternatively, Plaintiffs fail to state any plausible claim for relief as a matter of law. Additionally, as a threshold matter, the Court lacks personal jurisdiction over Omegle, an Oregon limited liability company with its principal place of business in Washington State and, most recently, Florida. For any or all of these reasons, Plaintiffs' Complaint should be dismissed.

## FACTUAL ALLEGATIONS

### I.   The Parties

**Plaintiffs.**  According to the allegations of the Complaint, Plaintiffs M.H. and J.H. are the parents of the 11-year-old minor C.H. and reside in Morris County, New Jersey. (Dkt. 1 at ¶ 3.)

**Omegle.com, LLC.**  Omegle is a limited liability company organized under the laws of Oregon and, at the time of the allegations in the Complaint, had its principal place of business in Washington State. (Declaration of Leif K-Brooks in

1

Support of Motion to Dismiss ¶¶ 4-5, Ex. 2.) In 2009, the Omegle online real-time chat service, through which users can meet and chat with new people by text or video via its website located at <omegle.com>, launched. (Id. at ¶ 3.)

Omegle does not have any offices or other physical locations in New Jersey. Nor does it own any property, including servers, in the state nor does it have any other physical presence in New Jersey. Omegle does not have any employees or bank accounts in New Jersey. It is not registered to do business in New Jersey and therefore does not have a registered agent for service of process in the state. Omegle does not target its website specifically to residents of New Jersey; it has the same offerings in this state that it has in all other states. Nor does Omegle target any advertising materials at New Jersey or its residents. (Id. at ¶¶ 6-11.)

## II.   C.H.'s Use of the Omegle Website

Plaintiffs acknowledge that the landing page of the Omegle website clearly prohibits users under 13 years of age from using Omegle's real-time chat service and prohibits users under 18 years of age from using the service without a parent's or guardian's permission. (Dkt. 1 at ¶ 32; *see also* K-Brooks Decl. at ¶ 3, Ex. 1.) Despite this prohibition—which appears just below the chat options—the Complaint alleges 11-year-old C.H. accessed the Omegle website in March 2020, apparently without parental permission. (Dkt. 1 at ¶ 39.)

The Complaint alleges C.H. elected to be randomly paired with another user

via the video chat option at least twice. The first random pairing was with a group of minors. C.H. elected to end that chat and start a second video chat. (Dkt. 1 at ¶ 39.) In this second pairing, C.H. allegedly observed a black screen on which text began appearing. (Id. at ¶ 40.) The Complaint alleges that the user C.H. was randomly paired with said "he knew where [she] lived" and provided her "geolocation." The Complaint does not explain what is meant by "geolocation." The user also allegedly stated that there were other cell phones and computers in C.H.'s house and threatened to "hack" them. (Id. at ¶ 41.)

The Complaint alleges that the third-party user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer. She complied with the user's instructions. (Id. at ¶ 43.) The user allegedly captured screenshots or videos of C.H.'s actions. (Id. at ¶ 44.) C.H. allegedly reported the incident to her parents who then reported it to local law enforcement. (Id. at ¶ 45.) According to the Complaint, the criminal investigation into the alleged criminal acts of the third-party user has "reached a dead end." (Id. at ¶ 46.)

## III.   Procedural History

Plaintiffs filed this action on August 25, 2020. (*See* Dkt. 1.) The Complaint alleges four causes of action: (1) violation of the Video Privacy Protection Act (Id. at ¶¶ 52-58); (2) intrusion upon seclusion (Id. at ¶¶ 60-66); (3) negligence (Id. at ¶¶ 68-74); and (4) intentional infliction of emotional distress (Dkt. 1 at ¶¶ 76-82).

3

Omegle was served on October 1, 2020. Pursuant to a stipulation of the parties,

Omegle's response to the Complaint was due on November 20, 2020. (Dkt. 5.)

## DISCUSSION

### I.   Omegle is Not Subject to Either General or Specific Personal Jurisdiction in the State of New Jersey

When reviewing a Rule 12(b)(2) motion to dismiss for lack of personal

jurisdiction, the Court must accept the plaintiff's allegations as true. *Pinker v.*

*Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once the

existence of personal jurisdiction is challenged, the plaintiff must "prov[e] by

affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v.*

*Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation

marks omitted). A plaintiff meets this burden by "establishing with reasonable

particularity sufficient contacts between the defendant and the forum state."

*Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.

1987). If a plaintiff satisfies this initial burden, the defendant must then show that

the assertion of jurisdiction would be unreasonable. *Ameripay, LLC v. Ameripay*

*Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004).

In a diversity case, a federal court may exercise personal jurisdiction over a

nonresident defendant to the extent allowed under the law of the forum state.[1]

---

[1] The Complaint alleges diversity jurisdiction yet asserts a claim under the federal
Video Privacy Protection Act. That statute does not authorize nationwide service.

*Metcalfe*, 566 F.3d at 330. Since New Jersey's long-arm statute allows for the exercise of personal jurisdiction "to the fullest limits of due process, [the Court must] look to federal law for the interpretation of the limits on in personam jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (internal quotation marks omitted). Due process requires that a non-resident defendant have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal quotation marks omitted).

### A.      Omegle is Not Subject to General Jurisdiction in New Jersey

Personal jurisdiction over a defendant may be established through general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). With respect to a corporate entity, the Supreme Court emphasized that the proper question for the general jurisdiction inquiry is whether a nonresident corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (internal quotation marks omitted); *see also Frutta Bowls Franchising*

---

*See* 18 U.S.C. § 2710. Absent a federal statute that provides for such service, the Court looks to New Jersey statutes and rules. *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, No. 16-6076, 2017 U.S. Dist. LEXIS 196980, *41 (E.D. Pa. Nov. 29, 2017). Accordingly, the result is the same.

*LLC v. Bitner*, No. 18-2446 (FLW), 2018 U.S. Dist. LEXIS 208311, *7 (D.N.J.

Dec. 10, 2018) (applying *Daimler* analysis to an LLC). For an entity defendant,

"the place of incorporation and principal place of business are paradig[m] . . . bases

for general jurisdiction." *Daimler*, 571 U.S. at 137 (internal quotation marks

omitted). Only in an "exceptional case" will a corporate defendant be subject to

general jurisdiction outside of those locations. *Id.* at 139 n.19.

Here, the Complaint alleges that Omegle is a Washington-based limited

liability company with its principal place of business in Washington State. (Dkt. 1

at ¶ 5.) The Complaint does not allege that Omegle's affiliations with New Jersey

are so "continuous and systematic" as to render it at home here. Nor could it, given

that Omegle's principal place of business was in Washington (and now Florida)

and it does not have any property, offices, employees, or other "continuous or

systematic" presence in New Jersey. (K-Brooks Decl. at ¶¶ 5-11.)

### B. The Complaint Lacks Any Allegation of Express Aiming by Omegle, and Specific Jurisdiction is Likewise Unavailable

Specific jurisdiction requires a showing of purposeful direction towards the

forum state. Specifically, (1) the defendant must have purposefully directed its

activities at the forum, (2) the litigation must arise out of or relate to at least one of

those activities, and (3) the exercise of jurisdiction must otherwise comport with

fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312,

317 (3d Cir. 2007). The inquiry looks to the nonresident defendant's activities

directed specifically to the forum state, rather than its contacts with persons who reside in the forum state. *Parkway-Kew Corp. v. Harris Mach. Tools, Inc.*, No. 20-6044, 2020 U.S. Dist. LEXIS 202687, *10 (D.N.J. Oct. 30, 2020). The fact that tortious activity may have taken place online does not change the analysis: "tortious conduct—even over the Internet—must be intentionally directed or 'expressly aimed' at the forum State." *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 502 (D.N.J. 2017).

Omegle does not concede that it engaged in the necessary conduct, but focuses on the Complaint's deficient allegation of express aiming. The Complaint relies solely on the allegation that Omegle "caus[es] its products and services to be disseminated in this District," and therefore jurisdiction is proper "under the stream of commerce doctrine." (Dkt. 1 at ¶ 10.) However, the Third Circuit has expressly rejected this doctrine. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (finding "no merit in the . . . stream-of-commerce theory of personal jurisdiction"). The Complaint similarly alleges that Omegle "operates throughout the United States, including in New Jersey" and that it "regularly conducts business in this District . . . by causing its products and services to be disseminated in this District[.]" (Dkt. 1 at ¶¶ 5, 10.) *Shuker* found a similar allegation insufficient to confer personal jurisdiction. 885 F.3d at 780 (finding that an allegation of "efforts 'to exploit a national market' that 'necessarily included

Pennsylvania' are insufficient").

The lack of any allegations regarding Omegle's alleged targeting of the forum state means that Plaintiffs have failed to make out a *prima facie* case of specific jurisdiction. *Phillips v. Snap-on, Inc.*, No. 19-cv-2229, 2020 U.S. Dist. LEXIS 8403, *8 (D.N.J. Jan. 17, 2020) (relying on "the lack of any alleged connections to New Jersey" in concluding that plaintiffs "have failed to make a *prima facie* showing of jurisdiction"). Accordingly, dismissal is proper.

## II.   Plaintiffs Fail to State Any Plausible Claim for Relief Against Omegle

FED. R. CIV. P. 8(a)(2) requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief." While not draconian, this pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also Rodriguez v. Certified Credit & Collection Bureau*, Civ. No. 19-1649, 2019 U.S. Dist. LEXIS 153661, *2 (D.N.J. Sept. 9, 2019)

(stating that while the standard for pleading a right to relief is not a "probability requirement", it must rise above a speculative or "sheer possibility" level) (internal quotation marks omitted). On a Rule 12(b)(6) motion to dismiss, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. But no such assumption of veracity applies to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" likewise do not suffice. *Id.* at 678.

On a motion to dismiss, the Court considers only the complaint, "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting the exception to the rule against consideration of materials extraneous to the complaint for a "document integral to or explicitly relied upon in the complaint") (internal quotation marks omitted).

## A. Plaintiffs' State-Law Claims are Barred by Section 230 of the Communications Decency Act

Section 230 of the Communications Decency Act ("CDA 230" or "Section 230") states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any state law to

9

the contrary. 47 U.S.C. § 230(e)(3). CDA 230 creates federal immunity for a cause of action based on content originating from a third-party user of the service. *Green v. Am. Online*, 318 F.3d 465, 470-71 (3d Cir. 2003). Courts, including this one, have noted the policy choice of Congress in enacting CDA 230, and as such, have concluded its immunity should be broadly construed. *See Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 325 (D.N.J. 2015) ("[T]he CDA manifests a Congressional policy supporting broad immunity.").

CDA 230 provides immunity to a wide range of state law claims, including the types of claims Plaintiffs assert.[2] Courts have held that CDA 230 bars claims for intentional infliction of emotional distress as well as claims for negligence and invasion of privacy. *See DiMeo v. Max*, 248 F. App'x 280, 281-83 (3d Cir. 2007) (affirming denial of amendment as futile in view of CDA 230 when plaintiff sought to add claims of intentional infliction of emotional distress and defamation); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (rejecting claims against Google for defamation, invasion of privacy, and negligence).

---

[2] While no reported decision addresses whether CDA 230 bars claims under the Video Privacy Protection Act ("VPPA"), CDA 230 should offer immunity even if the act is categorized as a criminal statute. CDA 230 states that it "shall [not] be construed to impair the enforcement of" any Federal criminal statute. 47 U.S.C. § 230(e)(1). Courts have held that CDA 230 nevertheless bars civil claims brought under federal criminal statutes. *See, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019) ("Section 230(e)(1) is inapplicable in [a] civil action"), *cert. denied*, 140 S. Ct. 2761 (2020). But, while Omegle does not waive its CDA 230 defense to the VPPA claim, the claim fails on its own merits, as discussed below.

Immunity under CDA 230 has three elements: (1) the defendant is the provider or user of an "interactive computer service"; (2) the asserted claims treat the defendant as the publisher or speaker of the information; and (3) the information is provided by another "information content provider." *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007).

### 1.    *Omegle is the provider of an "interactive computer service"*

First, there is no dispute that Omegle is the provider of an "interactive computer service," which would entitle it to the protections of CDA 230. The Complaint alleges that Omegle is a website "that enables an individual user to communicate with random individuals across the world anonymously via text and video." (Dkt. 1 at ¶ 20.) This places Omegle squarely within the definition of an interactive computer service "because its website gives [users] access to a common server for purposes of social networking." *Saponaro*, 93 F. Supp. 3d at 323; *see also Green*, 318 F.3d at 469-70 (finding AOL to be the provider of an "interactive computer service" and noting that "[c]hat rooms are a modern-day analog to yesteryear's telephone party lines and allow individual parties to 'talk' to as many as twenty-three other parties at one time").

### 2.    *Plaintiffs' state-law claims seek to treat Omegle as the publisher or speaker of third-party communications*

Second, the claims seek to treat Omegle as the publisher or speaker of third-party content, specifically video and/or text communications. Courts have held this

element is satisfied where a plaintiff alleges that an interactive computer service published offending content that it should have filtered. *See, e.g.*, *Green*, 318 F.3d at 470-71 (finding this element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content from its network"). Courts have also found this element satisfied where a plaintiff's claims are based on an offending interaction which occurs through the site, which is ultimately based on content posted by third parties. *See*, *e.g.*, *Saponaro*, 93 F. Supp. 3d at 323 (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher or speaker of information provided by a third party). In this scenario, a plaintiff seeks to hold a defendant liable for "failing to properly supervise its site." *Id.* (internal quotation marks omitted). Thus, as noted in a case involving a dating app, a plaintiff's claim that defendant is liable because it failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that [the defendant] is liable because it fails to police and remove impersonating content." *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019). Here, Plaintiffs allege repeatedly that Omegle failed to monitor its site. (*See* Dkt. 1 at ¶ 35 (alleging that "[Omegle] took no precaution to monitor or log the content of the chats of its users"), ¶ 69 (alleging that Omegle "had an ongoing, non-delegable duty to

12

continue to monitor, supervise, inspect, and assess the use of service and application to prevent the mistreatment of its users"), ¶ 70 (alleging Omegle failed to "assess, inspect or otherwise" check on users), ¶ 80 (alleging Omegle failed to prevent the third-party user's access to C.H.).) The gravamen of the Complaint is that Omegle failed to adequately police its website and prevent an offensive interaction with another user.

The Fifth Circuit's conclusion in a factually similar case is on point. *See Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008). There, the mother of a 13-year-old girl sued the provider of a social network for allowing her daughter to access the website and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. *Id.* at 416. Similar to the allegations in this case, the mother argued that the platform was liable for failing to implement proper safeguards. The Fifth Circuit rejected this argument and held that it was premised on an attempt to hold the platform liable as a publisher or speaker:

> [Plaintiffs'] claims are barred by the CDA, notwithstanding their assertion that they only seek to hold MySpace liable for its failure to implement measures that would have prevented [plaintiff] from communicating with [the wrongdoer]. Their allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content.

*MySpace*, 528 F.3d at 420.

The Complaint makes vague allegations directed at Omegle's website

design. (Dkt. 1 at ¶¶ 25-26.) Courts have generally rejected this type of a claim in the context of a website or app that is used by a third party to harass a fellow user. *See, e.g.*, *Saponaro*, 93 F. Supp. 3d at 324 (concluding that the defendant "merely provid[ed] *neutral* tools to carry out what may be unlawful or illicit [conduct]"); *Herrick*, 306 F. Supp. 3d at 589-90 (concluding that defendant provided "neutral" tools). Here, the Complaint fails to state—in a manner consistent with the plausibility standard—any claims regarding the allegedly defective design. *See, e.g.*, *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-23 (W.D. Pa. Mar. 27, 2018) (granting CDA 230 dismissal based on plaintiff's failure to allege that defendant "created or developed" the offensive content at issue). Moreover, those vague and non-specific allegations of defective design which the Complaint does contain are the type of neutral tools rejected by the courts in *Saponaro* and *Herrick*. (*See* Dkt. 1 at ¶ 21 (alleging users can be matched based on subject matter), ¶ 25 (alleging that Omegle's website does not require authentication), ¶ 26 (alleging that Omegle's website users are able to "grab screenshots" of conversations).) The second element is thus satisfied.

### 3. *The Complaint fails to allege that Omegle created or authored any offensive content*

Finally, the Complaint also alleges that the allegedly offending communication originated from a third-party user. For example, it alleges that the third-party user "informed C.H. that he knew where C.H. lived and . . . told C.H.

that he knew that . . . there were other cell phones and computers in C.H.'s house, which he threatened to hack." (Dkt. 1 at ¶ 41.) Similarly, it alleges that Doe made various demands on C.H. (Dkt. 1 at ¶ 43.) The Complaint is bereft of any allegation that Omegle "created or authored" the allegedly offensive communications. *See Mmubango v. Google, Inc.*, No. 12-1300, 2013 U.S. Dist. LEXIS 24989, *7 (E.D. Pa. Feb. 22, 2013) (finding Google immune under CDA 230 and noting the complaint did not allege Google "created or authored the derogatory statement" but instead allegedly "'stored' and 'broadcasted'" the statements). A plaintiff who alleges a defendant "created or developed" allegedly offensive content must do so based on "well-pleaded facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione*, 2018 U.S. Dist. LEXIS 51066 at *18-19. Plaintiffs have not satisfied that standard.

As a result, CDA 230 bars all of Plaintiffs' state law claims against Omegle.

## B.    Plaintiffs Cannot State a Plausible Claim Under the VPPA

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was enacted after a newspaper published a profile of Supreme Court nominee Judge Robert Bork that included a list of 146 films he and his family had rented from a video store. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015). The VPPA "sought to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials[.]" *Id.* at 1253

(internal quotation marks omitted). In furtherance of that narrow purpose, the VPPA prohibits a "video tape service provider" from knowingly disclosing to a third party "personally identifiable information concerning any consumer of such provider". 18 U.S.C. § 2710(b)(1). "The Act creates a private cause of action for plaintiffs to sue persons who disclose information about their video-watching habits." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Here, Plaintiffs fail to state a VPPA claim for at least three reasons, any one of which is fatal to the claim: (1) Omegle is not a "video tape service provider"; (2) C.H. is not a "consumer" as defined by the VPPA; and (3) Omegle did not disclose C.H.'s "personally identifiable information" to a third party.

### 1.   *Omegle is not a "video tape service provider" under the VPPA*

A threshold requirement for a VPPA claim is that the defendant is a "video tape service provider," which is statutorily defined as:

> **any person, engaged in the business** . . . **of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials**, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.

18 U.S.C. § 2710(a)(4) (emphasis added).

Here, the Complaint is devoid of any *facts* showing that Omegle is a "video tape service provider" as defined by the VPPA. Rather, Plaintiffs simply quote the statutory definition and then assert, in conclusory fashion, that Omegle "deliver[s]

16

videos recorded on its website." (Dkt. 1 at ¶ 52.) But Plaintiffs fail to provide any facts to support that naked assertion nor could they as there are no prerecorded videos offered on Omegle's website. As Plaintiffs' allegations demonstrate, the Omegle website permits users to engage in *real-time* text or video chats with one another. (*See, e.g.*, Dkt. 1 at ¶ 20 ("Omegle is a website that enables an individual user to communicate with random individuals across the world anonymously via text and video.").) Thus, Plaintiffs have not alleged and cannot allege that Omegle—which offers only a real-time chat service—is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Omegle therefore is not a "video tape service provider" and Plaintiffs' VPPA claim fails on that ground alone.

### 2. C.H. is not a "consumer" as defined by the VPPA

Even ignoring the fact that Omegle is not a "video tape service provider," Plaintiffs' VPPA claim fails for the independent reason that C.H. is not a "consumer" under the act. "Consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). C.H. does not claim to be a "renter" or "purchaser," nor could she, as Omegle does not rent or sell its real-time chat service (much less any prerecorded videos). C.H. also does not explicitly claim to be a "subscriber;" however, as that is the only remaining option, Omegle focuses on the "subscriber" portion of the

"consumer" definition. The Complaint alleges that "[a]s users [sic] of the [Omegle] website, C.H. is a consumer within the [VPPA's] definition[.]" (Dkt. 1 at ¶ 53.) But even assuming that Plaintiffs are equating "users" with "subscribers," C.H. still fails to qualify as a "consumer" under the VPPA.

Although the Third Circuit has not squarely addressed the meaning of "subscriber" in the VPPA's definition of "consumer," courts in other circuits have. Generally, courts have held that while there need not necessarily be a payment, "something more" than merely visiting a website or downloading an app and viewing video content is required to be a "subscriber" under the VPPA.

For example, in *Ellis v. Cartoon Network, Inc.*, the Eleventh Circuit held that payment, while not required, is a factor that should be considered in determining whether a plaintiff is a "subscriber." 803 F.3d at 1256. Relying in part on dictionary definitions of "subscriber," the court also found that the "common thread" in those definitions was that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Id.* The court found that the plaintiff—who had simply downloaded the free Cartoon Network app and viewed free content on the app—did not satisfy the definition as there was "no ongoing commitment or relationship." *Id.* at 1257 (also characterizing downloading an app as "the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the

website's content"); *see also Perry v. CNN, Inc.*, 854 F.3d 1336, 1343-44 (11th

Cir. 2017) (finding that "the ephemeral investment and commitment associated

with [plaintiff's] downloading of the CNN App on his mobile device" was

insufficient to make him a "subscriber" under the VPPA).

The United States District Court for the Southern District of New York

adopted a similar definition of "subscriber" under the VPPA. In *Austin-Spearman*

*v. AMC Network Entm't LLC*, the plaintiff viewed video clips on AMC's website

for free without any required login. 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015). Like

*Ellis*, the court required evidence of some more "durable" relationship for the

plaintiff to be a "subscriber":

> Whatever the nature of the specific exchange, what remains is the
> subscriber's deliberate and durable affiliation with the provider:
> whether or not for payment, these arrangements necessarily require
> some sort of ongoing relationship between provider and subscriber,
> one generally undertaken in advance and by affirmative action on the
> part of the subscriber, so as to supply the provider with sufficient
> personal information to establish the relationship and exchange.

98 F. Supp. 3d at 669. *See also In re Hulu Privacy Litig.*, No. C 11-03764 LB,

2012 U.S. Dist. LEXIS 112916, *22-23 (N.D. Cal. Aug. 10, 2012) (finding that

plaintiffs had adequately alleged that they were "subscribers" where they "signed

up for a Hulu account, became registered users, received a Hulu ID, established

Hulu profiles, and used Hulu's video streaming services").

The First Circuit's decision in *Yershov v. Gannett Satellite Info. Network,*

*Inc.* is not inconsistent with the reasoning of those courts that have held that simply accessing free video content is insufficient to make one a "subscriber." 820 F.3d 482 (1st Cir. 2016). But in contrast to *Ellis*, the First Circuit found that the plaintiff had alleged the required "something more":

> We would describe the allegations (and their reasonable inferences) in this case quite differently [from *Ellis*]. To use the App, Yershov did indeed have to provide Gannett with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections. . . . And by installing the App on his phone, thereby establishing seamless access to an electronic version of USA Today, Yershov established a relationship with Gannett that is materially different from what would have been the case had USA Today simply remained one of millions of [websites] that [he] might have accessed through a web browser.

*Yershov*, 820 F.3d at 489.

Here, Plaintiffs fail to plausibly allege the "something more" required for C.H. to be a "subscriber" of Omegle's real-time chat service and therefore a "consumer" under the VPPA. C.H.'s claim to be a "subscriber" is based on being a one-time "user[]" of the website. (Dkt. 1 at ¶ 53 and ¶ 39 (admitting that C.H. had never used the Omegle website before).) But "[s]uch casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [plaintiff] a 'subscriber'." *Austin-Spearman*, 98 F. Supp. 3d at 669. The claim that merely being a one-time "user" of a website makes one a "subscriber" would read out any limiting force that term has in the VPPA's definition of

"consumer." Moreover, Plaintiffs do not allege that C.H. was required to register to use the Omegle website (and thereby provide any personal information) or download an app to use the chat service, nor was she required to pay to use the website. In short, there are no facts showing that C.H. had any relationship, much less a durable one, with Omegle that would be sufficient to make her a "subscriber." Thus, because she is not a "consumer," the VPPA claim should be dismissed on this independent ground.

### 3. Omegle did not disclose "personally identifiable information" as defined by the VPPA

Alternatively, Plaintiffs' VPPA claim should be dismissed because they have not alleged (and cannot allege) that Omegle disclosed any "personally identifiable information" ("PII"). The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

As an initial matter, it is not clear what PII Omegle allegedly collected and disclosed. The Complaint simply alleges that Omegle "collected consumers' personally identifiable information . . . within [sic] 18 U.S.C. § 2710(a)(3)" and "disclosed PII to third-parties [sic]." (Dkt. 1 at ¶¶ 54-55.) Elsewhere the Complaint refers to "C.H.'s personally identifiable information, including C.H.'s geolocation" (Id. at ¶ 4), and later alleges that the third-party user who allegedly committed the criminal acts against C.H. "provided C.H. with her geolocation" (Id. at ¶ 41). The

Complaint also several times refers vaguely to C.H.'s "personally identifiable information and/or viewing data," without any description of either type of information. (*See* id. at ¶¶ 47, 49, 50, 60.) Therefore, the only information that Plaintiffs appear to allege constitutes PII under the VPPA is C.H.'s "geolocation." But "geolocation" does not constitute "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

The Third Circuit recently addressed the meaning of PII under the VPPA and concluded that the narrow purpose of the act supported a narrow definition:

> Our review of the legislative history convinces us that **Congress's purpose in passing the [VPPA] was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits**.

*In re Nickelodeon*, 827 F.3d at 284 (emphasis added). Notably, the court rejected the plaintiffs' reliance on the definition of PII in the Children's Online Privacy Protection Act ("COPPA") to argue for an expanded definition of that term in the VPPA. *Id.* at 286-88. Here, Plaintiffs also cite COPPA's definition of PII but to the extent they contend that definition should be read into the VPPA's definition, the Third Circuit has already rejected that argument.

Ultimately, the Third Circuit agreed with other federal courts that have held that the VPPA "'protects personally identifiable information that identifies a

specific person and ties that person to particular videos that the person watched.'"
*In re Nickelodeon*, 827 F.3d at 285 (quoting *In re Hulu Privacy Litig.*, No. 11-cv-3764 (LB), 2014 U.S. Dist. LEXIS 59479, *28 (N.D. Cal. Apr. 28, 2014)); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting the Third Circuit's "ordinary person" standard for PII under the VPPA in part because it "better informs video service providers of their obligations").

Other courts have similarly required that, for purposes of the VPPA, PII must be information that is disclosed by the "video tape service provider" that "itself identifies a particular person as having accessed specific video materials." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015). Thus, PII *does not* include information that must be combined with information from third-party sources to achieve the identification function. *See id.* at 182 (noting that only information disclosed by a video tape service provider that alone ties a particular person to specific video materials qualifies, "not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties"). Thus, a VPPA plaintiff must establish the video tape service provider knew that it was disclosing: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

But here, Plaintiffs' VPPA claim fails to plausibly allege any of these requirements for PII. First, even assuming that C.H.'s "geolocation" (which the Complaint neither explains nor defines) could qualify as PII, it was the third-party user—<u>not</u> Omegle—who allegedly "provided C.H. with her geolocation" (e.g., made the disclosure). (Dkt. 1 at ¶ 41.) There is no allegation (nor could there be) that Omegle provided that information to the third-party user rather than that third party obtaining it by some other means such as simply using an IP address location finder. Thus, because Plaintiffs fail to plausibly allege any disclosure by Omegle, their claim fails on that ground alone.

Second, even disregarding that fatal flaw, Plaintiffs have not plausibly alleged, and cannot plausibly allege, that the information purportedly disclosed by the third-party user (C.H.'s "geolocation") is capable, by itself, of (1) identifying her, (2) identifying video material, and (3) identifying the connection between the two (e.g., that she requested or obtained that specifically-identified video material). Firstly, "geolocation" refers broadly to any means of identifying a user's geographic location (or that of the user's device), which can range from the macro (e.g., country, state, city) to the micro (e.g., street address). Plaintiffs make no allegation that the "geolocation" provided by the third-party user was sufficiently specific to identify C.H. Rather, Plaintiffs only vaguely allege that the third-party user said he "knew where C.H. lived and provided C.H. with her geolocation."

(Dkt. 1 at ¶ 41.) Secondly, Plaintiffs also have not alleged, and cannot allege, that the information (1) identified specific videos or (2) connected C.H. with any such specific videos. Again, because Omegle does not offer prerecorded video content on its website, there are no videos to be either identified or linked to C.H.

In sum, Plaintiffs have not alleged any facts demonstrating that (1) Omegle is a "video tape service provider," (2) C.H. is a "consumer," or (3) Omegle disclosed PII that alone identified both C.H. <u>and</u> specific videos <u>and</u> tied her to specific videos she requested or obtained. For any or all of these reasons, Plaintiffs' VPPA claim should be dismissed with prejudice as a matter of law.

### C.   The Complaint Fails to Allege Any Plausible State-Law Claims

#### 1.   *The Complaint fails to state a plausible claim for intrusion upon seclusion for the use of the video real-time chat service*

To state a claim for intrusion upon seclusion, Plaintiffs must establish that there has been an "intentional intrusion, 'physical[] or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person.'" *Friedman v. Martinez*, 242 N.J. 449, 454 (N.J. 2020) (quoting RESTATEMENT (SECOND) OF TORTS § 652B ("RESTATEMENT")). To be an intentional intrusion, the actor allegedly committing the intrusion must believe or be "substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *In re Nickelodeon*, 827 F.3d at 293 and n.194 (internal quotation marks omitted); *see also Jevic v. Coca Cola Bottling Co.*, No. 89-4431,

1990 U.S. Dist. LEXIS 8821, *24 (D.N.J. June 6, 1990) (noting that "one cannot intrude when one has permission").

Here, the Complaint is again vague as to the precise nature of the allegedly "highly offensive" intrusion by Omegle. The Complaint vaguely alleges that C.H.'s "personally identifiable information and/or viewing data" were "surreptitious[ly] collect[ed] and track[ed]," and that Omegle purportedly engaged in "surreptitious, highly-technical tracking of users through video." (Dkt. 1 at ¶¶ 60-61.) But these vague allegations, which omit any actual facts, do not state a plausible claim for intrusion upon seclusion for several reasons.

First, Plaintiffs' intrusion claim cannot be based simply on C.H.'s use of video in the real-time chat with her fellow users. She chose to use the video chat option and thus gave permission for the use of video. *See, e.g.*, *Jevic*, 1990 U.S. Dist. LEXIS 8821 at *23-24 (finding that plaintiff could not state a claim for intrusion based on an employer's drug test as plaintiff twice consented to the test).

Second, the vague allegations fail to either establish an objectively reasonable expectation of privacy or demonstrate that the alleged intrusion would be highly offensive to a reasonable person (or both). As discussed above with respect to the VPPA claim, the Complaint fails to allege that Omegle collected any information that in fact identified C.H. or her "viewing data." Moreover, it fails to allege any facts to explain how Omegle purportedly tracked C.H. "through video."

26

(Dkt. 1 at ¶ 61.) Moreover, to the extent Plaintiffs contend the intrusion was any screenshots or video captured by the third-party user, that alleged intrusion was committed by the user, not Omegle. *See* RESTATEMENT § 652B, cmt. b (stating that it is the "intrusion itself [that] makes the defendant subject to liability").

The only remaining allegation is the same as raised in connection with the VPPA claim; specifically, that the purported collection of PII (e.g., C.H.'s "geolocation") constitutes the alleged intrusion. But even if the Complaint had alleged the collection of C.H.'s "geolocation" by Omegle (as opposed to the third-party user), there is no objectively reasonable expectation of privacy with respect to the "geolocation" when online nor is the collection of the "geolocation" highly offensive to a reasonable person for purposes of an intrusion claim.

In the internet context, courts have rejected intrusion upon seclusion claims alleging the collection of much more specific information than the unspecified "geolocation" and/or "viewing data" Plaintiffs allege here. For example, in *In re Nickelodeon*, the plaintiffs alleged an intrusion claim against Viacom and Google relating to the use of cookies placed on the computers of users who visit Viacom's websites. The plaintiffs alleged that these cookies were used to collect information about their children and track their children's web browsing and video viewing activities. *In re Nickelodeon*, 827 F.3d at 269. As to Google, the court found that the use of tracking cookies, whether targeted at adults or children, was not

"sufficiently offensive, standing alone, to survive a motion to dismiss." *Id.* at 294-95. The court reached a different conclusion with respect to Viacom because of the "duplicitous tactics" it used in collecting the information, namely, stating that it would not collect the personal information of children but then doing so. *Id.* at 295.

A number of cases have relied on *In re Nickelodeon* in rejecting intrusion claims based on websites' collection of users' information. For example, in *Popa v. Harriet Carter Gifts, Inc.*, the plaintiff alleged an intrusion claim based on the defendant's alleged collection of her name, residential and email addresses, and keystrokes and mouse clicks as she browsed defendant's website. 426 F. Supp. 3d 108, 112, 122 (W.D. Pa. 2019). Relying in part on *In re Nickelodeon*, the court held that the collection of this information did not rise to the level of "the type of highly offensive act to which liability can attach":

> The surreptitious gathering of this type of information may cause concern, even deep concern, about electronic privacy. . . . But even well-founded concern is not enough to give rise to tort liability. Such liability requires conduct that may outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. [Plaintiff] has not alleged any such conduct.

*Popa*, 426 F. Supp. 3d at 122-23.

The court in *Manigault-Johnson v. Google, LLC* likewise rejected an intrusion claim based on the alleged collection of PII in the internet context. No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019). There, the parents of children who allegedly had their PII collected while viewing

28

videos via mobile apps and websites sued for intrusion upon seclusion. *Id.* at *2, 12. The defendants had collected the personal information from children under 13 without giving notice and obtaining consent in alleged violation of COPPA. *Id.* at *14. The court first questioned whether the plaintiffs had plausibly alleged an objectively reasonable expectation of privacy given the context but ultimately assumed that they had for purposes of its analysis.[3] *Id. See also Four Navy SEALs v. Associated Press*, 413 F. Supp. 2d 1136, 1140-41, 1146-47 (S.D. Cal. 2005) (finding no objective expectation of seclusion with respect to photos uploaded to a website by plaintiff and noting that courts have found "there is no reasonable expectation of privacy in transmissions over the internet"). Relying on *In re Nickelodeon*, the court concluded that the plaintiffs' allegations—that defendants had collected and used for commercial gain the personal information of children without parental notification and authorization—did not allege "sufficiently offensive conduct" to state a claim for intrusion. *Manigault-Johnson*, 2019 U.S. Dist. LEXIS 59892 at *15-18. Moreover, the court found that they failed to

---

[3] In questioning the sufficiency of the allegations on this point, the court cited *People v. Stipo. Stipo* involved a challenge to a warrant to an internet provider for a user's subscriber information where the user alleged he had a reasonable expectation of privacy in information he receives and transmits over the internet. But the court found that "internet users have no expectation of privacy in the . . . IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *Stipo*, 195 Cal. App. 4th 664, 668-69, 124 Cal. Rptr. 3d 688, 692-93 (Cal. Ct. App. 2011).

adequately allege that the alleged intrusion harmed plaintiffs. Although they alleged that they were "harmed by the intrusion in to their private affairs as detailed throughout this Complaint", the court held that they alleged no actual facts to support the alleged harm. *Id.* at *18 (internal quotation marks omitted).

Similarly here, Plaintiffs' allegation that Omegle purportedly collected C.H.'s PII (i.e., C.H.'s "geolocation" or unspecified "viewing data") fails to state an intrusion upon seclusion claim either because (1) she has no objectively reasonable expectation of privacy in that information when transmitting over the internet, or (2) collection of that information is not the type of highly offensive conduct required for an intrusion claim. Moreover, Plaintiffs fail to allege any facts to support the assertion of harm resulting from the alleged intrusion. Similar to the plaintiffs in *Manigault-Johnson*, Plaintiffs simply allege that C.H. "was harmed by the intrusion into her private affairs as detailed throughout this Complaint." (Dkt. 1 at ¶ 64.) But any such alleged harm proximately caused by the alleged intrusion is not supported by any actual facts "detailed" in the Complaint.

In the end, Plaintiffs' intrusion upon seclusion claim boils down to an insufficient "unadorned, the-defendant-unlawfully-harmed-me accusation" and a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Thus, for any or all of these reasons, Plaintiffs' intrusion upon seclusion claim should be dismissed.

### 2.    *Plaintiffs fail to state a plausible claim for intentional inflection of emotional distress against Omegle*

To state a claim for intentional infliction of emotional distress, Plaintiffs must establish intentional and outrageous conduct by Omegle that proximately caused severe distress. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (N.J. 1988). Plaintiffs must prove that Omegle acted intentionally (e.g., that it intended "both to do the act and to produce emotional distress") or recklessly (e.g., that it acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow"). *Id.* at 366. But intentional infliction of emotional distress claims face an extremely high bar. The intentional conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting RESTATEMENT § 46 cmt. d). Additionally, Plaintiffs must establish that Omegle's alleged conduct was the proximate cause of C.H.'s alleged emotional distress. *Buckley*, 111 N.J. at 366. Finally, the "emotional distress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to endure it.'" *Id.* at 366-67 (quoting RESTATEMENT § 46 cmt. j). The severity of  the alleged emotional distress raises, in part, a question of law; specifically, it is for the Court to decide "whether as a matter of law such emotional distress can be found". *Buckley*, 111 N.J. at 367.

Plaintiffs allege that the "outrageous conduct" of Omegle was its alleged

31

failure to prevent children from using its website and to monitor the site "to ensure that its users were not being sexually abused, mistreated, or exploited[.]" (Dkt. 1 at ¶ 76.) They allege that C.H. suffered unspecified "severe emotional distress" as a result of the "act of sexual exploitation" by the third-party user. (Id. at ¶ 80.) But Plaintiffs fail to state a claim for relief for a number of reasons.

First, the Complaint is devoid of facts demonstrating that Omegle acted with the requisite intent, namely, that it intended both to do the alleged act at issue and to produce emotional distress. *See Buckley*, 111 N.J. at 366. The only conduct that Plaintiffs specify is Omegle's alleged failure to prevent children from using its website and to monitor its website to prevent users from being sexually mistreated by other users. However, Plaintiffs have not demonstrated that Omegle's alleged failure to take these actions can be considered intentional when Omegle is under no obligation to take such actions. Plaintiffs also fail to offer any facts establishing that Omegle intended to produce emotional distress by its action or inaction.

Second, the alleged conduct by Omegle—essentially an alleged failure to monitor and guarantee the safety of the users of its website—does not rise to the level of the type of outrageous conduct necessary for a claim for intentional infliction of emotional distress. New Jersey courts have found the "elevated threshold" necessary for the type of outrageous conduct sufficient to state such a claim "only in extreme cases." *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super.

15, 23 (N.J. Super. Ct. App. Div. 2001) (providing examples of cases where the claim was permitted and rejected). But the alleged conduct by Omegle is no different in kind than any other social networking website or app that offers users the means to interact with one another in real time, including but not limited to Facebook, Twitter, Twitch, SnapChat, WhatsApp and many others. Therefore, Omegle's alleged conduct is not out of the norm and cannot be considered so "outrageous" or "extreme" as to permit liability for intentional infliction of emotional distress. Moreover, imposing liability on websites in such circumstances based on an alleged failure to monitor and police the actions and content of third-party users would contravene the purpose of Section 230. *See, e.g.*, *Saponaro*, 93 F. Supp. 3d at 325 (recognizing Section 230's purpose to "maintain the robust nature of internet communications" and the chilling effect of holding social network hosts "liable for third-party communications") (internal quotation marks omitted).

Third, Omegle's alleged conduct—not preventing C.H. from using its website and from being sexually mistreated by the third-party user—was not the proximate cause of any emotional distress C.H. suffered.[4] Rather, any emotional distress she suffered was the result of the criminal actions of the third-party user.

---

[4] Generally, proximate cause is a question for the fact finder, but the Court can decide the issue where reasonable minds could not differ on whether causation has been established. *Fleuhr v. City of Cape May*, 159 N.J. 532, 543 (N.J. 1999).

Proximate cause is a "combination of logic, common sense, justice, policy and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *People Express Airlines, Inc. v. Consol. Rail Corp.*, 100 N.J. 246, 264 (N.J. 1985) (internal quotation marks omitted). Here, Omegle is indisputably not the *direct* cause of the emotional distress C.H. suffered as a result of the criminal acts of the third-party user. Nor have Plaintiffs plausibly alleged that Omegle is the indirect cause of distress resulting from the user's alleged criminal acts. The Restatement acknowledges the principle that one generally may reasonably assume that people will not violate the criminal law:

> In the ordinary case [the actor] may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause harm to anyone. This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law.

RESTATEMENT § 302B, cmt. d. Omegle—like the numerous social networking websites and apps that allow users to interact with one another in real time—may reasonably assume that its users will not violate the criminal law. Moreover, even though not obligated to, Omegle provided clear warnings to its users that people may behave inappropriately and that Omegle is not responsible for the behavior of

its users. (*See* K-Brooks Decl. ¶ 3, Ex. 1.[5]) Therefore, under these circumstances, common sense and policy demonstrate that Omegle did not proximately cause any distress C.H. suffered as a result of the criminal acts of the third-party user.

Additionally, even ignoring the other fatal flaws in the claim, Plaintiffs fail to provide any factual allegations of emotional distress C.H. allegedly suffered as a result of Omegle's alleged conduct, much less the type of severe emotional distress required. Rather, Plaintiffs allege that C.H. suffered "severe emotional distress," "severe emotional and psychological distress," and "severe mental anguish, humiliation and emotional and physical distress." (Dkt. 1 at ¶¶ 77, 80, 81.) But these allegations simply restate this element of the claim in varying ways; Plaintiffs do not allege any *facts* demonstrating C.H.'s emotional distress. *See Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22, 35 (N.J. Super. Ct. App. Div. 1997) (affirming dismissal where plaintiffs failed to establish the "severity of emotional harm" necessary to the claim and plaintiffs' expert offered only "bare conclusions . . . unsupported by factual evidence").

Therefore, for any or all of these reasons, Plaintiffs fail to state a claim for intentional infliction of emotional distress as a matter of law.

---

[5] The Court may consider the screenshot of the Omegle website as the Complaint explicitly relies upon and quotes from the website (*see, e.g.*, Dkt. 1 at ¶¶ 22-24, 32). *See In re Burlington*, 114 F.3d at 1426 (on motion to dismiss, court may consider documents "integral to or explicitly relied upon in the complaint").

### 3.   *Plaintiffs fail to state a claim for negligence as a matter of law*

The elements required to establish a claim of negligence are: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594 (N.J. 2013). Plaintiffs allege that Omegle owes "the highest duty of care" to "the general public" to "provide safe means and methods for using its website." (Dkt. 1 at ¶ 68.) They allege that Omegle breached this duty by failing to "monitor, supervise, inspect, and assess the use of service . . . to prevent the mistreatment of its users" and to "interview, assess, inspect or otherwise check on the welfare of its users." (Id. at ¶¶ 69, 70.) Plaintiffs also allege that Omegle was the "direct and proximate" cause of the criminal acts committed by the third-party user against C.H., which resulted in unspecified emotional distress. (Id. at ¶¶ 71, 73.)

The threshold question whether a duty exists is generally a question of law for the Court. *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (N.J. 1996). "The actual imposition of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (N.J. 1993). That inquiry looks at all the circumstances and public policy considerations, including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* at 439. Although

foreseeability of harm is a significant consideration, it alone is rarely sufficient to establish the existence of a duty. *Carvalho*, 143 N.J. at 573 (usually "more is needed" beyond foreseeability of harm, "that 'more' being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care") (internal quotation marks omitted).

Here, even assuming that Plaintiffs could establish the foreseeability of harm, other factors that must be considered weigh heavily against imposing a duty of care upon Omegle to protect the users of its real-time chat service from harm perpetrated by their fellow users. *See Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 319 (N.J. 2013) (noting that "because imposing a duty based on foreseeability alone could result in virtually unbounded liability," the New Jersey Supreme Court has "been careful to require that the analysis be tempered by broader considerations of fairness and public policy"). For example, the relationship between Omegle and C.H. is at best fleeting—according to Plaintiffs' allegations, C.H. used the Omegle website only a single time, she was not required to register in order to use the real-time chat service, nor was she required to make any payment to Omegle. In short, C.H.'s "relationship" with Omegle was no different or more substantial than her "relationship" to any other website C.H. may visit that imposes no obligation upon a visitor in order to access and use the site.

Fairness and public policy likewise counsel against imposing a duty of care

on Omegle with respect to the users of its website. A number of cases have

declined to impose such a duty on websites like Omegle that facilitate users'

communications. For example, in *Dyroff v. Ultimate Software Group, Inc.*, the

plaintiff alleged that a social networking website had a duty to warn her son who

died from an overdose of fentanyl-laced heroin purchased from an alleged dealer

he met on the website. No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *1,

30 (N.D. Cal. Nov. 26, 2017). The district court found that there was no special

relationship between a website and its users that would support imposing a duty to

warn and no other ground to impose an ordinary duty of care. *Id.* at *36-40. The

Ninth Circuit affirmed that decision, noting that "[n]o website could function if a

duty of care was created when a website facilitates communication, in a content-

neutral fashion, of its users' content." *Dyroff v. Ultimate Software Group, Inc.*, 934

F.3d 1093, 1101 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020).

Similarly, in *Doe No. 14 v. Internet Brands, Inc.*, the defendant offered a

networking website on which aspiring models could post profiles. No. CV 12-

3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, *1-2 (C.D. Cal. Nov. 14,

2016). Two individuals used the website to identify targets for a "rape scheme,"

under which they would contact users and, posing as talent scouts, lure the users to

a fake audition where they were drugged and assaulted. *Id.* at *2. The defendant

learned that these individuals were using the website to perpetrate their scheme and

38

the plaintiff subsequently became a victim of it. *Id.* at *2, 4. Plaintiff sued the website alleging a negligent failure to warn claim. On remand from the Ninth Circuit,[6] the district court again dismissed the plaintiff's claim, finding that the website had no duty to warn either the plaintiff or its users generally about the risk of the rape scheme perpetrated by the two individuals. *Id.* at *14. The court found "no exceptional reason to depart from the general common law rule that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Id.* at *13 (internal quotation marks omitted). Notably, the court also found that "imposing a duty . . . would likely have a 'chilling effect' on the internet by opening the floodgates of litigation." *Id.* at *14. *See also Beckman v. Match.com, LLC*, No. 2:13-CV-97 JCM (NJK), 2017 U.S. Dist. LEXIS 35562, *1-2, 6-8 (D. Nev. Mar. 10, 2017) (finding dating website had no duty to warn user who was attacked by an individual she met on the site), *aff'd*, 743 F. App'x 142 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1394 (2019).

Here, imposing a duty of care on Omegle—much less the "highest" duty to

---

[6] The district court originally dismissed the plaintiff's claim based on Section 230. But the Ninth Circuit reversed as the plaintiff's claim was not based on any content posted on the website by the two individuals perpetrating the scheme (because they did not post on the site) nor was it based on the defendant's monitoring of or failure to monitor the posts on the site. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016). As discussed above with respect to Section 230 immunity, that is not the case here, where Plaintiffs seek to hold Omegle liable for failing to monitor its users' communications on the website.

be the guarantor of website users' safety, as Plaintiffs propose—would be both largely ineffectual and unfair. As courts have recognized, no website that facilitates the communications of its users—including all social networking sites—could function if such a duty were imposed. Thus, because no duty of care exists as between Omegle and the users of its website or C.H. specifically, Plaintiffs' negligence claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to state any plausible claim for relief and should be dismissed.

Respectfully submitted this 20th day of November, 2020, by:

**Trimboli & Prusinowski, LLC**          **Focal PLLC**

 s/*James T. Prusinowski*                     s/*Stacia N. Lay*
James T. Prusinowski (JP0729)          Stacia N. Lay (admitted *pro hac vice*)
268 South Street                              Venkat Balasubramani (admitted *pro hac vice*)
Morristown, NJ 07960                       900 1st Avenue S., Suite 201
jprusinowski@trimprulaw.com          Seattle, WA 98134
                                                    stacia@focallaw.com
                                                    venkat@focallaw.com

*Attorneys for Defendant OMEGLE.COM, LLC*