# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., <br><br> Plaintiffs, <br><br> v. <br><br> OMEGLE.COM, LLC, <br><br> Defendant. | Civil Action No. 2:20-cv-11294-KM-JBC <br><br> **Motion Return Date: January 19, 2021** |

---

## REPLY IN SUPPORT OF DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

---

**Trimboli & Prusinowski, LLC**

James T. Prusinowski (JP0729)
jprusinowski@trimprulaw.com
268 South Street
Morristown, NJ 07960
(973) 660-1095

*Attorneys for Defendant OMEGLE.COM, LLC*

*On the Brief:*
Stacia N. Lay (admitted *pro hac vice*)
Venkat Balasubramani (admitted *pro hac vice*)

# TABLE OF CONTENTS

I.      Plaintiffs Fail to Meet Their Burden of Establishing Jurisdiction ..................1

     A.      An Accessible Website is Alone Insufficient to Confer Jurisdiction............................................................................1

     B.      Plaintiffs Cannot Rely on the "Effects Test" to Prove Jurisdiction..................................................................3

II.     CDA 230 Bars Plaintiffs' Challenge to the "Operation" of the Website........4

III.    Plaintiffs' VPPA Claim Fails on All Three Required Elements....................7

     A.      No Facts Show That Omegle is a Video Tape Service Provider..........7

     B.      As a One-Time User of the Website, C.H. is Not a "Subscriber" ........8

     C.      Plaintiffs Ignore the Narrow Definition of PII in the VPPA ...............9

IV.     Plaintiffs' Intrusion Upon Seclusion Claim Fails As a Matter of Law.........10

V.      Plaintiffs Do Not State a Plausible Claim for IIED ......................................13

VI.     There is No Duty to Guarantee the Safety of Website Users........................13

VII.    Plaintiffs Suggest No Amendments That Would Cure the Deficiencies ......15

CONCLUSION ......................................................................................................15

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................12

*Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017) .......3

*CoachSource, LLC v. Coachforce*,
        2019 U.S. Dist. LEXIS 51561 (D.N.J. Mar. 27, 2019)....................................2

*D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) ............................3, 4

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ......................................6

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008)...............................................4, 5

*Eash v. Cty. of York*, 450 F. Supp. 3d 568 (M.D. Pa. 2020) ...................................14

*Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303 (N.J. 2013) ....................15

*Fair Housing Council v. Roommates.com, LLC*,
        521 F.3d 1157 (9th Cir. 2008)............................................................................5

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007).........................................13

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009).....................................5, 6

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ...........................4, 6

*Hershey Co. v. Pagosa Candy Co.*,
        2008 U.S. Dist. LEXIS 29410 (M.D. Pa. Apr. 10, 2008) ................................2

*Hubbard v. Google LLC*,
        2020 U.S. Dist. LEXIS 239936 (N.D. Cal. Dec. 21, 2020) ..........................12

*In re Asbestos Prod. Liab. Litig.*, 822 F.3d 125 (3d Cir. 2016) ...............................7

*In re Google, Inc.*, 806 F.3d 125 (3d Cir. 2015) ....................................................11

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016)....8, 10, 11

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007) ......................................................15

*Manigault-Johnson v. Google, LLC*,
    2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) ...............................11

*Marfione v. Kai U.S.A., Ltd.*,
    2018 U.S. Dist. LEXIS 51066 (W.D. Pa. Mar. 27, 2018)...............................6

*McClung v. 3M Co.*,
    2019 U.S. Dist. LEXIS 164198 (D.N.J. Sept. 25, 2019) ................................3

*McDonald v. Kiloo Aps*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019).........................13

*McTaggart v. Comm'r of Soc. Sec.*,
    2020 U.S. Dist. LEXIS 75908 (D.N.J. Apr. 30, 2020) ...................................1

*Rodriguez v. Wells Fargo Bank, N.A.*,
    2019 U.S. Dist. LEXIS 60526 (D.N.J. Apr. 9, 2019) .....................................9

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ...................................4

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) .......................1, 2

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ...........................................................................8

## **Statutes and Rules**

18 U.S.C. § 2710(a)(1) ...............................................................................................8

18 U.S.C. § 2710(a)(3) ...............................................................................................9

18 U.S.C. § 2710(a)(4) ...............................................................................................7

47 U.S.C. § 230 ...............................................................................................passim

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ......................................................................................12, 13

Plaintiffs' Opposition—which was filed late without explanation—distorts Omegle's arguments. But the Opposition makes it clear that Plaintiffs attempt to mask a Children's Online Privacy Protection Act ("COPPA") claim as various federal and state law claims that do not apply. Yet, once the rhetoric and gratuitous attacks are stripped from the Opposition, it is evident that Plaintiffs' claims cannot withstand scrutiny and should be dismissed.

## I.      Plaintiffs Fail to Meet Their Burden of Establishing Jurisdiction

Plaintiffs concede by omission Omegle's argument that because Omegle is not headquartered in New Jersey, it is not subject to general jurisdiction here. *McTaggart v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 75908, *11 (D.N.J. Apr. 30, 2020) (party's failure to address an argument was a concession that it was correct). Thus, the question is whether they allege sufficient facts to confer specific jurisdiction over Omegle in New Jersey. They do not.

### A.      An Accessible Website is Alone Insufficient to Confer Jurisdiction

Plaintiffs argue that a non-resident defendant's amenability to personal jurisdiction is "proportionate to the nature and quality of commercial activity . . . conduct[ed] over the internet." (Dkt. 15, p. 11.) But that is not the applicable standard. In a case Plaintiffs cite, the Third Circuit held that "the mere operation of a commercially interactive web site should *not* subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454

(3d Cir. 2003) (emphasis added). Rather, there must be "something more." *Id.*
Defendant's conduct of business "over the internet" is not the critical measure of
its amenability to personal jurisdiction; rather, the key is whether plaintiff
demonstrates defendant's "purposeful availment" (i.e., targeting of the forum).
*CoachSource, LLC v. Coachforce*, 2019 U.S. Dist. LEXIS 51561, *10 (D.N.J. Mar.
27, 2019) (to establish jurisdiction, plaintiff "must show more than mere
interactivity," it must demonstrate "purposeful availment"); *Hershey Co. v. Pagosa
Candy Co.*, 2008 U.S. Dist. LEXIS 29410, *12-16 (M.D. Pa. Apr. 10, 2008).

Plaintiffs do not point to allegations showing that Omegle targeted New
Jersey or its residents in any way. They allege only that Omegle (1) seeks to reach
"all internet users, regardless of geographical location" and (2) "indiscriminately
responds to each and every internet user who accesses its website." (Dkt. 15,
p. 12.) This is nearly identical to the allegation the Court found insufficient in
*CoachSource*. 2019 U.S. Dist. LEXIS 51561 at *11 (rejecting claim that defendant
was subject to personal jurisdiction because its "website is 'available to potential
customers nationwide'"). Plaintiffs further argue in a footnote that in 2019, various
individuals were arrested for using social media platforms to target children.
(Dkt. 15, p. 11 n.2.) This is not an "alleged fact . . . that the Court could reasonably
construe as evidence that Defendant targeted its website to residents in New Jersey
or engaged in business with residents of New Jersey." *CoachSource*, 2019 U.S.

Dist. LEXIS 51561 at *11. Omegle has offered evidence that it does not target New Jersey. (Dkt. 10-2, ¶¶ 10-11.) In the face of this, Plaintiffs' bare allegation is insufficient to allege purposeful availment and satisfy their "sole burden" of showing jurisdiction is proper by "sworn affidavits or other competent evidence." *McClung v. 3M Co.*, 2019 U.S. Dist. LEXIS 164198, *14 (D.N.J. Sept. 25, 2019).

**B.      Plaintiffs Cannot Rely on the "Effects Test" to Prove Jurisdiction**

Plaintiffs alternatively rely on the "effects test" as a basis for personal jurisdiction, citing this Court's decision in *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017). *Christie* is not helpful to them. That case included an ex-employee's claims under the Computer Fraud and Abuse Act where personal jurisdiction was proper because the defendant engaged in a tortious act toward plaintiff "who they knew was located in New Jersey." *Id.* at 505. The Court affirmed that in order to confer jurisdiction, "tortious conduct—even over the Internet—must be intentionally directed or 'expressly aimed' at the forum State." *Id.* at 502. Plaintiffs fail to point to any allegation in the Complaint that Omegle knew Plaintiffs are located in New Jersey or that Omegle engaged in tortious acts knowing the effects would be felt there. Nor is there any evidence that Omegle "expressly aimed its tortious conduct at the forum." *Id.*

Nor is *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) helpful to Plaintiffs. There, the Third Circuit confirmed that a non-resident defendant's

contacts "must amount to 'a deliberate targeting of the forum.'" *Id.* at 103. The court held that personal jurisdiction was not proper over a non-resident plane manufacturer, despite the fact that its plane crashed in the jurisdiction. The court also declined jurisdiction under the "stream of commerce" theory. *Id.* at 105-06.

## II.    CDA 230 Bars Plaintiffs' Challenge to the "Operation" of the Website

Plaintiffs do not dispute that Omegle is an "interactive computer service" provider. However, they take a narrow view of the scope of CDA 230 immunity. Contrary to their assertion (Dkt. 15, p. 20), the protection CDA 230 provides is not limited to a platform's mere "publication" of information provided by a third party. Rather, it extends to claims based on failure to prevent harm from occurring on a platform based on interactions with third parties. *See*, *e.g.*, *Doe v. MySpace Inc.*, 528 F.3d 413, 419-20 (5th Cir. 2008) (finding claims against social networking site barred as premised on a duty to monitor); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (rejecting claims against dating app based on "fail[ure] to police and remove impersonating content"). The crux of Plaintiffs' claims is that Omegle failed to prevent either Plaintiffs or the other user from using the site and thereby causing harm to Plaintiffs (i.e., that Omegle failed to "monitor" the site). But courts have repeatedly rejected these arguments. *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) ("The Third Circuit has recognized the CDA's immunity provision to protect internet service providers from allegations of

4

negligently failing to monitor their websites."); *MySpace*, 528 F.3d at 420 (finding CDA 230 barred claims notwithstanding assertion that plaintiffs "only seek to hold [defendant] liable for its failure to implement measures that would have prevented [the victim] from communicating with [the wrongdoer]").

In an attempt to sidestep CDA 230's robust immunity, Plaintiffs argue this case is analogous to *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008). That analogy does not hold up to the slightest scrutiny. *Roommates* involved fair housing claims brought against a roommate-finder website. The court held that the website could be held to "develop" offensive content by requiring subscribers to include discriminatory criteria in their profiles. *Id.* at 1166-67. But here, Plaintiffs do not make any such allegations about Omegle's website. Rather, they allege that the website "enables an individual user to communicate with random individuals across the world anonymously via text and video." (Dkt. 1, ¶¶ 20-21.) The Complaint does not allege that Omegle required users to provide any demographic information or that it used such information to screen users in a manner inconsistent with anti-discrimination laws. Plaintiffs' reliance on the Tenth Circuit's *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) decision is also misplaced. That case involved an FTC enforcement action against an entity that "solicited requests" for confidential phone records and "then paid researchers to obtain it." *Id.* at 1199. The court rejected the defendant's argument for CDA 230

immunity but held that "a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content." *Id.* In contrast, Plaintiffs do not allege facts showing that Omegle played any role in the development of offensive content.

Plaintiffs cite *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) to argue that Omegle should be liable for an alleged failure to police its site, but this case too is readily distinguishable. There, the website obtained information about specific profiles and individuals independent of the site, and the claims did not arise from any interaction that occurred on the site. *See Herrick*, 306 F. Supp. 3d at 592 (noting that in *Internet Brands*, the "bad actors . . . did not post any content to the website, and they contacted Doe offline"). As the *Herrick* court noted, *Internet Brands* does not stand for the proposition that a duty to warn claim overcomes CDA 230 immunity based on general knowledge that a platform may be used to effect unlawful or harmful activity. *Id.* (rejecting argument that knowledge of improper activity on website translates into "heightened accountability").

Finally, Plaintiffs repeat their vague allegations regarding Omegle's alleged collection of "PII". As argued in Omegle's Motion (Dkt. 10-1, pp. 29-30), Plaintiffs never actually allege what information Omegle is supposed to have improperly collected. *Cf. Marfione v. Kai U.S.A., Ltd.*, 2018 U.S. Dist. LEXIS 51066, *17-20 (W.D. Pa. Mar. 27, 2018) (finding plaintiffs' allegation that

defendant "created or developed" content at issue failed to comport with *Iqbal* and *Twombly*). Indeed, elsewhere in the Complaint, Plaintiffs take issue with Omegle's supposed failure to monitor the content of video chats. (Dkt. 1, ¶ 35.) Omegle merely provided a platform where users can interact with other users. (Id., ¶¶ 20-21, 24.) As such, CDA 230 bars Plaintiffs' state law claims.

## III.   Plaintiffs' VPPA Claim Fails on All Three Required Elements

### A.   No Facts Show That Omegle is a Video Tape Service Provider

A "video tape service provider" is a "person, engaged in the business . . . of rental, sale, or delivery of **prerecorded** video cassette tapes or similar audio visual materials[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). Plaintiffs assert they plead *facts* alleging that Omegle meets this definition by stating that it is "'engaged in the business' of 'delivering videos recorded on its website.'" (Dkt. 15, p. 16.) But this "fact" simply quotes the statutory language and is thus deficient. *In re Asbestos Prod. Liab. Litig.*, 822 F.3d 125, 133 (3d Cir. 2016) (courts need not accept "conclusory factual allegations or legal assertions"). Nor could Plaintiffs plausibly allege facts showing that Omegle meets the definition. Omegle offers a *real-time* chat function on its website. (Dkt. 1, ¶¶ 20-21, 24.) Plaintiffs do not point to a single *fact* showing that Omegle is engaged in the business of providing prerecorded videos. The definition must also be viewed in the context of the VPPA's narrow purpose to permit "plaintiffs to sue persons who disclose

information about their video-watching habits." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Because Omegle does not provide prerecorded videos, there is no information about its users' "video-watching habits" to disclose. Thus, because Plaintiffs cannot establish the threshold element of their VPPA claim, the Court need go no further and should dismiss the claim.

### B.   As a One-Time User of the Website, C.H. is Not a "Subscriber"

The VPPA claim also fails because Plaintiffs do not, and cannot, allege that C.H. is a "subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). They do not refute Omegle's showing that to be a "subscriber," they must demonstrate "something more" than using the Omegle website on a single occasion. All of the cases Omegle cites, including *Yershov v. Gannett Satellite Info. Network, Inc.*, recognize that such a fleeting connection—use of a website on only one occasion, where no registration, log-in or download is required—does not make one a "subscriber." (Dkt. 10-1, pp. 26-28.)

Plaintiffs' assertion that C.H. is a "subscriber" because she had to "sign[] in" and "move through Omegle's long list of disclaimers before she could proceed" (Dkt. 15, p. 17), is false and irrelevant. As the Complaint shows, she was not required to "sign in" to the website or "move through" disclaimers to use the real-time chat. (Dkt. 1, ¶ 24 ("To use the Omegle website, a user simply clicks on 'text' or 'video' under the words 'start chatting.' The user is then immediately placed in

a chat with a stranger."); *see also* Dkt. 10-2, p. 5.) They also fail to explain the relevance of the inaccurate assertion regarding the disclaimers to the question whether they allege the "something more" required to be a "subscriber." Their claim that C.H. is a "subscriber" because Omegle allegedly collected her PII is also faulty. The cases do not support the assertion that collecting PII alone is sufficient to make one a subscriber, particularly as Plaintiffs do not allege collection of PII as defined by the VPPA. (*See* Dkt. 10-1, pp. 26-28.) The only PII they allege is C.H.'s "geolocation," which, as discussed below, is not PII under the VPPA.[1]

Thus, Plaintiffs' VPPA claim fails as a matter of law on this separate basis.

## C. Plaintiffs Ignore the Narrow Definition of PII in the VPPA

The VPPA defines PII narrowly as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Yet, Plaintiffs ignore this definition and instead rely on the "broad definition" of PII in COPPA. (Dkt. 15, p. 18.) But not

---

[1] As previously shown (Dkt. 10-1, pp. 29-30, 32), Plaintiffs do not explain what precisely is meant by the allegation that the other user (not Omegle) provided C.H. with her "geolocation," a term that encompasses a wide range of information from the very broad (e.g., country, region, state or city) to, more rarely, the more specific (e.g., street). In their Opposition, they now assert that the other user provided C.H.'s "geolocation" and "as a result identified her address," citing paragraph 41 of the Complaint. (Dkt. 15, p. 18.) But paragraph 41 does not allege that the user identified her "address" (Dkt. 1, ¶ 41) and Plaintiffs cannot amend their Complaint via an opposition brief. *See Rodriguez v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 60526, *16 n.9 (D.N.J. Apr. 9, 2019).

only do basic statutory interpretation principles preclude simply ignoring applicable statutory language, the Third Circuit has specifically rejected the argument that COPPA's PII definition can be used in lieu of the VPPA's definition. *See In re Nickelodeon*, 827 F.3d at 286-88 ("Congress's decision to retain the 1988 definition of [PII] indicates that the [VPPA] serves different purposes, and protects different constituencies, than other, broader privacy laws," including COPPA). The Third Circuit described the type of information encompassed by the VPPA as that which "[1] identifies a specific person and [2] ties that person to particular videos that the person watched." *Id.* at 285. Plaintiffs only assert that C.H.'s "geolocation" was provided by the other user (not Omegle). They do not allege that the "geolocation" was sufficient to identify C.H., much less tie her to "particular videos" that she obtained from Omegle. (*See supra*, p. 9 n.1.) Therefore, because Plaintiffs allege no facts showing that Omegle disclosed PII as defined by the VPPA, this claim is properly dismissed.

## IV.   Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of Law

Plaintiffs first falsely suggest that Omegle argued that C.H. consented to the "deceptive business practices that led to her violation" by using the real-time video chat option. (Dkt. 15, p. 24.) To the contrary, Omegle made a straightforward point: this is <u>not</u> a situation where a plaintiff was surreptitiously video recorded in a private location by another party and therefore the use of the video chat option

10

alone cannot support the intrusion claim. Plaintiffs also fail to point to any facts in the Complaint showing (1) that Omegle—as opposed to the other user—collected any of the alleged PII (i.e., C.H.'s "geolocation" and "viewing data"), or (2) that the alleged collection of such information was sufficiently offensive to support an intrusion claim. None of Plaintiffs' assertions alter that conclusion.

Plaintiffs accuse Omegle of "misinterpret[ing] the law" in showing that the collection of PII alone does not give rise to an intrusion claim. (Dkt. 15, p. 24.) But they ignore the Third Circuit's *In re Nickelodeon* decision (Dkt. 10-1, pp. 35-36), which found that collection of information similar to that alleged here was not "sufficiently offensive, standing alone" to state an intrusion claim. 827 F.3d at 294-95. The Third Circuit's *In re Google, Inc.*, 806 F.3d 125 (3d Cir. 2015) decision, which Plaintiffs cite, is of no help to them. There, it was Google's collection of information from cookie trackers ***and*** its contravention of browser cookie blockers while also representing that it respected those blockers that the court found sufficient to state a claim. *Id.* at150-51. Plaintiffs also incorrectly assert that the intrusion claim in *Manigault-Johnson* only failed because of a failure to allege harm from the collection of children's personal information without parental authorization. (Dkt. 15, pp. 24-25.) But the court found that the claim could not survive a motion to dismiss on the independent basis that the collection of such information was not "sufficiently offensive conduct." *Manigault-Johnson v.*

*Google, LLC*, 2019 U.S. Dist. LEXIS 59892, \*17-18 (D.S.C. Mar. 31, 2019).

Plaintiffs' causation allegation is also fatally flawed. They assert that Omegle's collection of C.H.'s PII "enabled" the other user "to use his knowledge of where she lived to blackmail her into submitting to sexual exploitation." (Dkt. 15, p. 25.) But they do not allege *facts* showing (1) that Omegle collected PII, (2) what specific PII it collected, or (3) how Omegle's collection of PII "enabled" the other user to engage in his criminal actions. Absent such facts, no reasonable person could conclude that Plaintiffs can establish the necessary causal link between Omegle and the harm suffered from the user's criminal actions.

Plaintiffs' reliance on the Musical.ly order is perplexing. (Dkt. 15, pp. 25-26.) That case was an enforcement action by the FTC under the FTC Act and COPPA. It in no way demonstrates that Plaintiffs state a plausible claim for relief for intrusion, or any other claim. *See Hubbard v. Google LLC*, 2020 U.S. Dist. LEXIS 239936, \*17-25 (N.D. Cal. Dec. 21, 2020) (finding state law claims similar to those alleged here preempted by COPPA). Finally, Plaintiffs incorrectly assert that an intrusion claim is uniquely immune from a Rule 12(b)(6) motion to dismiss. But that claim, like any claim, is subject to dismissal because it fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even the case they rely upon recognizes that "the plausibility of a privacy claim may be decided on the adequacy of the offensiveness element as a matter of

law." *McDonald v. Kiloo Aps*, 385 F. Supp. 3d 1022, 1034 (N.D. Cal. 2019).

## V.     Plaintiffs Do Not State a Plausible Claim for IIED

Plaintiffs improperly attempt to amend their claim via their Opposition by asserting that Omegle "facilitate[ed] an 11-year-old child's sexual abuse" by "luring" or "attract[ing]" her to its website. (Dkt. 15, pp. 10, 21, 30.) But the Complaint contains no *facts* showing that Omegle in any way "facilitated" the criminal actions of the other user by "luring" any child to its website. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (courts will "not consider after-the-fact allegations in determining the sufficiency of [a] complaint" under Rule 12(b)(6)). Plaintiffs' unsubstantiated accusation cannot save their flawed claim for intentional infliction of emotional distress. As Omegle showed (Dkt. 10-1, pp. 39-41), they fail to plausibly allege that a failure to monitor the actions, and guarantee the safety, of website users is the type of outrageous conduct necessary to state such a claim. Thus, this claim too should be dismissed.

## VI.    There is No Duty to Guarantee the Safety of Website Users

The Complaint asserts that Omegle owed "the general public" the "highest duty of care" to guarantee the safety of the users of its website. But, as Omegle showed (Dkt. 10-1, pp. 45-48), courts have declined to impose such a broad duty on websites and platforms with respect to the conduct and communications of users. Plaintiffs do not refute that showing. They also assert that they "clearly set[]

out Omegle's duty" and then list alleged breaches. (Dkt. 15, p. 27.) But allegations of breach do not demonstrate that a duty exists in the first place.

Plaintiffs then attempt to argue that a duty arose because Omegle allegedly made C.H.'s situation worse by "collect[ing] . . . her PII" and "enabl[ing]" the other user "to know where she lived and thus . . . blackmail her and sexually exploit her." (Id., p. 28.) But they do not plead any *facts* to support that assertion. Nor is the Court required to accept the unreasonable inference that Omegle provided the "geolocation" to the other user. *See Eash v. Cty. of York*, 450 F. Supp. 3d 568, 575 (M.D. Pa. 2020) (courts are "not required to draw unreasonable inferences from the facts"). Even assuming for argument purposes there were a breach of a purported duty with respect to the collection of PII, Plaintiffs fail to bridge the causation gap between such a breach and the other user's criminal actions. The Complaint is devoid of *facts* showing that Omegle's purported collection of PII "enabled" the user to engage in his criminal actions. Plaintiffs' assertion that Omegle's website is "vulnerable to hacking" because a user can "grab screenshots of previous conversations" and use that "data" to obtain a user's geographic location (Dkt. 15, p. 9) is nonsensical; it neither demonstrates the collection or disclosure of any information *by Omegle* nor in any way supports the existence of a duty owed by Omegle with respect to the actions of website users.

Additionally, Plaintiffs misrepresent Omegle's discussion of foreseeability.

But Omegle's point was clear: foreseeability of harm is not alone sufficient to prove that a duty exists because a contrary rule would lead to "virtually unbounded liability." *Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 319 (N.J. 2013).

Because Plaintiffs have failed to demonstrate the existence of a duty, the negligence claim should be dismissed.

## VII.   Plaintiffs Suggest No Amendments That Would Cure the Deficiencies

In a footnote, Plaintiffs contend they should be permitted to amend their Complaint. (Dkt. 15, p. 30 n.11.) But they fail to explain how they could correct the fatal deficiencies in their claims. The futility of amending the complaint alone justifies denying their request. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). As to personal jurisdiction, they rely solely on the deficient allegations in the Complaint and identify no additional facts that would satisfy their burden of establishing the existence of jurisdiction. The VPPA does not apply to Omegle or the factual situation they allege. Plaintiffs again do not identify any amendments that would save that claim. Finally, CDA 230 bars their state law claims and they do not show how they can plead around that immunity. Therefore, Omegle requests that the Court deny Plaintiffs' request for leave to amend their complaint.

## CONCLUSION

Omegle therefore respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and without leave to amend.

Respectfully submitted this 12th day of January, 2021, by:

**Trimboli & Prusinowski, LLC**          **Focal PLLC**

*s/James T. Prusinowski*                        *s/Stacia N. Lay*
James T. Prusinowski (JP0729)         Stacia N. Lay (admitted *pro hac vice*)
268 South Street                                   Venkat Balasubramani (admitted *pro hac vice*)
Morristown, NJ 07960                         900 1st Avenue S., Suite 201
jprusinowski@trimprulaw.com         Seattle, WA 98134
                                                           stacia@focallaw.com
                                                           venkat@focallaw.com

*Attorneys for Defendant OMEGLE.COM, LLC*